Internal Revenue First from Mr. Kenworthy, whenever you're ready. Good morning, your honors. Kevin Kenworthy for the appellants. You can all go back to Washington and report about the case that took place just before yours, okay? You can say, it's amazing what goes on down there. Indeed, indeed. May it please the court. Congress has authorized taxpayers like Hughes to use the completed contract method of accounting in connection with a home construction contract, as that term is defined by statute. Under the completed contract method of accounting, taxpayers recognize taxable gain or loss on a long-term contract only when the contract is substantially complete. Hughes is developing a master plan community near Las Vegas, Nevada, called Summerlin. Hughes sells partially developed real property to buyers, typically tract builders or to individuals who are obligated by contract to construct homes on the property they acquire. And under the same contracts, Hughes is obligated to complete improvements that are essential to the use and enjoyment of the homes in Summerlin. Without the improvements that Hughes constructs, homeowners in Summerlin would not be able to reach their home by roads, they would not have access to sewers and other utilities, nor would they be able to enjoy the amenities that homeowners in Summerlin, like a master plan community like Summerlin, expect. Without, there is, as an issue matter, there is no dispute that the contracts in question are long-term contracts, meaning in this context that the performance under the contract could not be completed within the same taxable year. Nor is there any dispute that the contracts are construction contracts, as that term is defined under the code. The only issue in this case is whether Hughes's contracts satisfy the cost-based test established by statute for being considered home construction contracts. On its face, the statute requires costs to be considered under an 80% threshold. At least 80% of the expected contract cost must be attributable to construction activities with respect to, one, dwelling units, and two, improvements to real property directly related to such dwelling units and located on the site of the dwelling units. The regulation says a taxpayer includes in the cost of the dwelling units. We don't have any dwelling units. We do. You're right. That's exactly what the reg says. That's the problem right here, is that what you're asking us to do, you have a classic percentage-of-completion contract, in a sense. I mean, it is the normal percentage-of-completion accounting system that would apply unless you fit under this, and you don't have any dwelling units, and not only that, you disclaim any dwelling units. You're an aider and abetter of dwelling units, but you don't have any. And so you're asking us, in a classic situation where you are getting income during the course of these projects, you are getting income because you're selling off land, so you're getting profits. And you could, in fact, use the normal method of reporting for that, but you say, oh, no, no, we're really in the home construction business, even though we don't build a single home. It's a problem. With respect, Your Honor, we receive revenues, no doubt, but there's a difference between receiving revenues and having taxable income. I know. What the completed contract method of accounting recognizes is that in case of long-term contracts, it's impossible to know whether you have gain or loss at the time that you receive revenues or that you start incurring costs. And so it is appropriate, and in such circumstances where Congress has authorized its use, to compute income on a transactional basis, spanning a number of years, we may not, we have revenues, undoubtedly, but on a given contract, we may or may not have taxable gain or loss. We don't know at the time the contract is entered into. You're the beneficiary of the fact that the regulations here are a little bit wrapped around the axle, but the bottom line is you don't sell any houses, and it's hard for me to understand how you could use something that ties right into the cost of the dwelling units. Well, the statute has two categories, right? It says that the cost must be attributable to construction with respect to dwelling units or to improvements to real property directly related to such dwelling units and located on the side of the dwelling units. Our costs are undoubtedly cost of improvements to real property. There's no dispute about that. We believe that the common improvements regulation that you cite actually supports our position. If anything, it makes clear is that the cost of common improvements, like Hughes Bills, are to be counted for purposes of the statutory test. Let me ask you something, Len. The way that regulation works, as you understand it, the common improvements come in and to be or where? That's a very good question. I know, it is a good question. What's your answer to it? We believe that the better reading of the common improvements regulation is that it confirms that the cost of common improvements are properly counted under category two, improvements to real property under the statute. The government takes statute two, but then it says a taxpayer includes in the cost of the dwelling units, and that's up an A in the regulation. Yes. And you got no dwelling units. Well, if that reading is correct, then we do have dwelling units within the context of the statute because the common improvement regulation declares that we have dwelling. Well, you have nothing but common improvements. I don't agree with that. I agree with that, Your Honor, of course. Yeah. If the common improvements, as I say, the common improvements regulation makes clear that the cost of such common improvements are counted for purposes of the statutory test, then it begs the question, perhaps, we don't think you have to answer this question, but it begs the question of, well, where do they go? Where do they fit? Yeah. Do they fit under category one, cost of category two, related improvements, I'll call it. The government insists that they can't be under category two. We believe that that's the more natural reading of the common improvement regulation and that it's interpreting the scope of category two, improvements to real property that are directly related to dwelling units and are located at the site of them. But if you accept for the sake of argument that they're included in dwelling units, that the common improvement regulation declares that these common improvement costs are, quote, dwelling units, that's a regulation, and it would be consistent with what most important in our view is that it be consistent with the statute, that those costs find a home under the statute. They're either, they have to be either dwelling unit cost or the cost of common improvements directly related to those such dwelling units. Yeah. We think that's not the best reading of the statute because it would render category two a very small, almost a nil category of cost. Yeah, exactly. I mean, that is the tail of a very large dog. So we think the better reading of the common improvements regulation is that that formulation really means that those costs are to be considered cost of real property improvements directly related. And that is made clear in the proposed regulations that were issued in 2009. Proposed regulations, but that's, I don't know if that helps you or hurts you. We think it helps us, Your Honor, but I understand that that's not the basis for decision in this case. Okay. So our real concern here is that the very cost that we're talking about would undoubtedly qualify if we also built a single home. Right. And that seems unfair that the court would distinguish between taxpayers on that basis when the statute establishes a strict cost-based standard. Well, the problem is that this whole thing was designed to help home builders, and you're not the proverbial home builder. So, I mean, and it's designed to be an exception in this particular case. You could drive a truck through the exception with the amount that's involved here and the nature of what it is you're claiming, which is common improvements. With all due respect, the support for the conclusion that this was designed to support home builders is not entirely clear from the record here. The statute, as we know, was adopted in a court conference. There was no bill in the House or Senate bills that were considered in the ultimately homeowners. I have no doubt about that. That seems evidently clear. But the legislative history in support of the congressional purposes behind it is very meager. The most that we can say is that Congress intended to expand the categories of taxpayers that were eligible to use the completed contract method of accounting. That's true. So I respectfully take issue with the suggestion that this was evidently intended to benefit home builders and only home builders, but also point out that what we do is essential to the construction of home builders. There'd be no doubt that a home builder could do the activities that we do, and some do. Some of the home builders, you would recognize as home builders, take raw land and develop it and then eventually construct homeowners. And in the case of a home, well, this is what we've been talking about. In the case of somebody who really is building homes, unlike you, unlike your client, then these common improvement costs would definitely be counted as part of the costs that are at issue here. I think there's no doubt that if we built, you know, one brick, I don't know what would be required. They should have come to your firm before they started this scheme. Well, that's the unfortunate consequence of the task force decision here, is that it exalts form over substance. We could readily accommodate our contractual arrangements with our builders, if given time, but that seems unnecessary when you have a statute that constructs a cost-based standard that we should be eligible to come under. Yeah. I understand. I understand the temptation. You know, actually, as I say, we're not for the fact that the regulation is kind of wrapped around the axle. You really wouldn't be able to make a really good case for yourself. But I disagree. It's the difficulty of the regulation that really supports your position. With respect, I disagree, Your Honor. I think that we would, even in the absence of the regulation, that we would prevail under the statute as written. Under? Under the statute. Under two I's. Most likely, yes. Not one I, two I's. And that would be sufficient to come within, to meet the 80 percent test. The statute constructs an additive test that evaluates your cost and decides are more than 80 percent of your or both. And it would be sufficient to have 100 percent common improvement cost on facts like this if we satisfy Category 2. Okay. I'd also like to address, in my remaining time, some of the tax court's evident policy concerns. The court, like you have expressed, Judge King, concern about the period of deferral here. But those concerns, we believe, are unwarranted. The taxpayer has recognized gain under many of its contracts. And to the extent that the recognition was slowed in this period of time, the tax years of 2007 and 2008, which was at the beginning of a very harsh housing crisis in Las Vegas, so there were no homes being built, virtually. But the deferral that the government, that seems to concern the tax court, would have the same time. So there is no suggestion that that should be an inappropriate deferral. And there is no evidence, in fact, the tax court disavowed any suggestion that the tax court engaged in any kind of manipulation to delay the completion of contracts and, therefore, the recognition of gain or loss. Okay. Well, if there's no further question, I'd like to reserve the rest of my time for a vote. Thank you, Mr. Kemmerer. Mr. Wiener. Good morning, and may it please the court. Andy Wiener for the Commissioner of Internal Revenue. As my opposing counsel stated, at issue here is whether it chooses contracts for the sale of land under terms that do not require them to build homes. And that homes were not in existence on the lands. And they were not required to make improvements to any residential lots containing any homes, whether they qualify as home construction contracts. Income from a home construction contract is entitled to be accounted for using the completed contract method, which, under Hughes' own estimates in this case, would allow them to defer income from the sales of the lots for decades in some instances. Hughes' contracts, however, do not qualify under the language of the statute or the regulations. And their attempt to defer the income from the sale of improved lands for indefinite periods is far from what Congress intended. Turning to the statute— Let me ask you a question. Not sure how to ask this. If you—your comment—this is what we're talking about here is common improvements, basically. Your Honor, the tax court said, to be precise, didn't make a finding that their improvements were common improvements. They said, if anything, they were common improvements. But, yeah, the definition of common improvements being that they benefit the dwelling units and that they're on the tract or tracts of land containing dwelling units would seem to apply. Yes, Your Honor. Well, so—so if they had built—if they had built some houses, you know, which they should have done, if they had built some houses, then these common improvements, where does that fit in in terms of the cost allocation? Does the common—if that's the same, they had built some dwelling units that would qualify under this thing, I mean, less than four and so on. The common improvements that they're talking about would fit in under the statute under A-1 or A-2? Your Honor, they wouldn't fit under either prong of the statute. What the statute contemplated, Your Honor, is the idea that home builders, people who build homes, usually sold individual freestanding home would be your archetypal example. Those—those—if 80 percent of your costs were attributable to the construction of a home or the—or the directly related on-site improvements, then you're entitled to use the completed contract method. What the statute doesn't expressly deal with is the development context in which, you know, some developers who do build homes— Also build common improvements. Yeah, also build common improvements. And the thing is, is that a quirk of how the 80 percent test would work in that context is that the common improvements could kick those developers out of being able to use the completed contract method. Because if the allocable share of the common improvement costs exceeds 20 percent of the contract costs, where, you know, in some developments you could have a golf course or, you know, other— Like a well. Yeah, that well could happen. Then those developers will be penalized by the—by the—by the fact that they are not only building houses, but they're also making common improvements. So IRS or Treasury responded to that. In this reg. In this reg. The reg— Which is not—yeah, which is not to say that they said that they are home improvement costs under subsection little i or subsection little 2i. It's to say that if you build homes, if you have dwelling unit costs, then you are allowed to include the allocable share of your common improvement costs in your dwelling unit costs for purposes of applying the—applying the 80 percent test. In the dwelling unit costs, not in—not in B. Not in B. I think it's clear— So if they had built houses, they would be able to include these common improvement costs in the—in the—in A, in dwelling units, in their cost of dwelling units. If they were a developer that constructed the homes for Summerlin. Right. Yes, but—but just to tease out what that means practically. If they had built the homes and they had built the common improvements, would they be selling—they would be selling to individual purchasers who would then acquire those homes and live in them like, you know, in a normal home buying transaction. And in that case, what they would do is they would get the completed contract method on a home-by-home basis. Right. Exactly. Hughes is selling huge parcels of land for tens of—twenties of—thirties of millions of dollars. The way the regulation reads, it says a taxpayer includes in the cost of the dwelling units. So when you sell the dwelling unit, that's when you recognize your gain, hopefully, and you include the common improvements. Then you're allowed to include it in the cost of the dwelling unit. Yeah, when you sell a home, again, returning to the archetypal example, the home is complete. You might have some common improvement costs if they exceed five—the completed contract method, just to make sure we know what we're talking about, is you have to have use and 95 percent completion of a contract in terms of its cost. So if you sell a home and you've got some outstanding common improvement costs, perhaps you can defer recognition of the income from the sale of an individual home until you're mostly done the common improvements, until the outflow share of common improvement costs are equal to or less than five percent of the total cost of the contract. But in most instances, you know, in a classic example, outside of a development situation, the completed contract method would almost assuredly be—you'd have to recognize the income when the house is complete and goes to closing, which makes sense because home builders, classically, you know, when you put a deposit down on a home construction, that goes into escrow. A home builder is not entitled to have access to that money typically. They get—when they complete the cost of building the home and that home is finished and then it goes to closing and they receive all the proceeds from the sale. So it makes sense in that narrow context that a home builder should be entitled to use the is—they have to recognize the income when they receive the actual money. But here, because these are land sales, you know, that began in 1998 and 2000, and they're sold to builders who are then going to develop the homes and then the common improvements that Hughes is obligated to build extend for far into the future based on how the property is being developed, when the builders are actually building their homes. That allows them to defer for decades well after they've received the proceeds. And to clarify two things that seem to be coming up repeatedly, the purchasers in these cases were not obligated to build homes. In fact, the tax court recognized they weren't obligated to build homes on pages 48 and 50 of the decision. They were—they were obligated, if they did build homes, to build them in accordance with particular confines that were provided for under the contracts. But there was no deadline for them to build any homes and there was no obligation for them to build any homes that was enforceable in any way. Second, the idea that just because you receive the money doesn't mean you can't—that you've determined that you have taxable income because you don't know what your profit is. That is a universal component of long-term contracts. Under the percentage completion method, what you do is you figure out what the—you look to what the contract value is, what you're going to receive under the contracts. You estimate your costs and then you create a—basically a profit ratio, profit to cost ratio. If you, for example, if it's going to cost you $10 to complete a long-term contract and you get $11 worth of proceeds, then you have—then you have a $1 cost ratio. So if you've expensed 50 percent or 50 cents, then you have to recognize 5 cents of income. And in fact, under the percentage completion method, there is even a look-back interest component that if you misestimated, you use this look-back interest mechanism that will true up—that you can use to then true up what your actual profit was and everybody is made whole. Even the taxpayer or the government would be the benefit of this look-back interest. And so Congress was not trying to make sure that a taxpayer could defer until they knew their exact profits. And Supreme Court cases actually going back into the 50s and 60s—I'm thinking of one, AAA Automobile Association and Schwoot, I think it was 1960 and 1963, both say when you have an unfettered right to receive income, but you know you're going to have to incur expenses related to that income at some point in the future, that does not mean that you're going to defer the recognition. You don't get the pass. Yeah, you don't get the pass. You still have—once you have the unfettered right to the cash, you have to recognize that income. Under AAA, the idea was they were getting membership dues and they knew statistically they were going to have to pay out a percentage of that as benefits to their members, you know, towing services and whatnot. And the Supreme Court says, well, but you got the membership dues and you have an unfettered right to that cash. You have income. And then you can expense your expenses the following year. And that's how the code works. And so I think that belies their argument that Congress was really trying to use the completed contract method to make sure that everything was done and you could, you know, do a total accounting of what each contract means and then figure out where your profit is at that point. What language specifically do you rely on to say this doesn't fit because? Well, under the statute, Your Honor—excuse me. Under the statute, you have two types of costs that would constitute home construction costs. You have the costs allocable to the construction of towing units is little i. And then two little i would be directly related to such towing units and on the site of such towing units. Real property improvements directly related to and on the site of such towing units. That language, such towing units, you have to have a towing unit in order to have real property improvements that are directly related to and on the site of such towing units. Under the regulations, as Judge King, I think you pointed out before, under the regulations and the common improvement regulations, if you look at the distinction between how common improvements are described relative to how home construction costs real property improvements directly related to and on the site of, for common improvements, they are merely beneficial dwelling units and on the tract or tracts of land that include dwelling units. And therein is, I think, an important distinction. In this case, to the extent that taxpayers had common improvements, they clearly didn't have improvements that were directly related to and on the site of such towing units. Given that there were no towing units, that is an extreme construction. But this is hard. If there had been, let's say they sold a few homes, which they probably should have done, but then where would the common improvements under the regulation would figure in, the cost of them would figure into the dwelling unit component? A, 2A? Okay. Is that right? It would figure into two, yes, because the common improvement regulation provides that a taxpayer include, and this is paraphrasing, but I think I'll be close, a taxpayer include in the cost of the dwelling units a allocable share of the common improvement costs. And so, therefore, if you do have a cost of a dwelling unit, then you are entitled to all the dwelling units that would be entitled to that common improvement. But again, I return to this point that that is not a panacea for Hughes in this case. That doesn't broaden, that doesn't mean that their entire business could have used the completed contract method, because if they had constructed dwelling units, they would have sold those dwelling units to homeowners, not home builders. And so, therefore, they would have sold, most people need one home. They're in the market for one home. So they would have sold single homes. For that particular home, then, they may have been entitled to a piece. They would have been entitled to use the completed contract method for individual homes that they constructed, and for that, they would have been able to include an allocable share of the common improvement costs. But to say if they had built one home, then all of Summerlin would have been entitled to use the completed contract method is wrong, because the completed contract method applies on a contract-by-contract basis. And so- Now, the proposed regulations that have been on the shelf for quite a while, they are designed to solve this problem for somebody like Howard Hughes? Well, by their own terms, they broaden the home construction contract exception. Their proposed regulations and treasury regulations, like regulations throughout the federal government, have no effect. Yeah, no, I know that. Yeah. But yes, they would, they completely, they replace and change the existing regulations that we're talking about, the common improvement- They can't change the statute. No, they cannot change the statute. No. And so, to the, well, if the suggestion by your point is that, well, if the language can, seems to, if the language seems to be ambiguous enough to support the proposed regulations, then couldn't the statute potentially then support taxpayers' argument in this case? And to that, I would say a couple of things. First of all, absent the regulation, the court's supposed to construe these, the exception to recognizing income narrowly, and absent the proposed regulations, you would never construe the statute by itself as accommodating common improvement costs under subsection little two. Wait a minute, say that again. You just said what? Absent this regulation? Absent the proposed regulation. Oh, the proposed regulation. Absent the proposed regulation, you would never look, you would never look to, you would never say that a common improvement cost is directly related to and located on the site of such dwelling units. Right. That was going to be my question. What weight do you put on the language? Where is it? Located on the, located on the site of such dwelling units. I think it's, well, I mean, I think that. What does that mean? Located on the site of such dwelling units would be, I believe, the lot, which is how you would normally situate a home. I think that the reasonable interpretation of the site of a home, that's the site of dwelling units. You're saying that if a builder puts in all the common improvements, absent the regulation, he would not be entitled to recover common improvements that weren't adjacent to, or actually part of the lot that sold, or what? No, they wouldn't be on the lot that sold. In fact, it's undisputed that in this record, for example, Hughes did not make common improvements to the lot. I'm asking how do we construe the statute? How do you, what does, that's my question. What does located on the site of such dwelling units mean? Does site mean adjacent to, or actually on the plot of land that includes the dwelling? It would be the plot that includes, it would be the lot. Absent the regulations, a builder who puts in common improvements could not include common improvements as part of the home construction contract. Yes, and the common improvements regulation doesn't say that common improvement costs are home construction costs under either I or too little I. What it says is that in order to, because the statute doesn't specifically speak to this issue of developers having both home construction costs and common improvement costs, we're going to make sure that a home builder who's building developments is entitled to still use the completed contract method by being able to include these costs. All I'm, that's, my question is, you say that located on the site of such dwelling units does not preclude common improvements? Located on, it does preclude common improvements. Then how can a regulation put it back in? That's the problem. You have a problem with this regulation, don't you? Well, I mean, the problem with the proposed regulation. No, I'm talking about the ones that are actually in effect, right? Okay. They talk about common improvements, don't they? They do talk about, yes. So how can you put in by regulation, yes, you can include applicable common improvements when you say under the statute common improvements don't come within located on the site of such dwelling units? Because the regulation, Your Honor, does not define common improvements as being located on the site of such dwelling units or as qualifying for such. It says sewers, roads, clubhouses. Those are, are those on the site of such dwelling units or not? They are not. Then it can't, you can't change the statute. That regulation is contrary to the statute. That's the problem. Your Honor, respectfully, it's our position that what Treasury has done here is that the statute does not specifically speak to common improvements one way or the other. Well, then you just told us the opposite. I'm confused. You said that language does not include common improvements. You said the language located on the site of such dwelling units does not include sewers, roads, clubhouses. The, um, the, the, to the extent that there is, um, the, the regulation we believe is, is not arbitrary, capricious, or manifestly contrary to the statute. So? Because it includes, as opposed to default. In the language, the site, located on the site of such dwelling units does include sewers, roads, clubhouses. No, it probably doesn't. But, you know, this sounds like the agent, like the treasurer, whoever wrote these regulations, their hearts swelled up and they said we're going to, we're going to bless these people by giving them the benefit of common improvements in the dwelling unit costs, um, as a cost that's reasonably be expected to be attributable to the dwelling units. I guess. Yes, Your Honor, as we point out, this is a, this is a provision that's designed to provide some taxpayer relief. Yeah. And so. I'm just trying to get to the statutory construction. You do not have the authority to change the statute. I'm just getting at what do you say the statute means? It is, we say that the statute that look directly related to, first of all, um, here you have no home construction. And so. I'm not asking about the facts. I'm asking what do you say the statute means? Directly related to and located on the site of such dwelling units does not include common improvements. Okay. So where does the statute give you authority to include the cost of common improvements? Where's the language that gives you the authority to do that? The purpose of the statute was to provide home construction. Where is the language that gives you the authority to include common improvements? Just tell me where it is. The, the regulation, Your Honor. In the statute. It's not a hard question. Tell me the language that lets you include common improvements. It's not in the plain language. Not there. And the only thing you can say, I don't think, I'm not sure that helps the taxpayer here, but the only thing that you can say is that total contract costs, which might include common improvements, um, reasonably expected to be attributable to construction activities with respect to the dwelling units. I mean, you have to fit it into the dwelling units. If you've got any argument at all about that, you've got to fit it into the dwelling units because you can't fit it into two eyes under the statute. I believe that the, the, the regulation, um, didn't mean to dodge the question, but I meant to, to, to speak to what the government's position is. The regulation, the purpose of which is to allow home builders to use the completed contract method. And so, therefore, because of an idiosyncrasy of home builders that build developments would potentially get kicked out of that. Treasury acted in a way that they thought was consistent with the purpose of the statute by providing this common improvements regulation. Got it. All right. I see that I've run over, but if there are any other questions, we ask that the court affirm the tax. Thank you, sir. We have five minutes on the bottle. Thank you, Your Honor. The government takes a remarkable position here, and that is that having, Congress having established a cost-based test for eligibility for the completed contract method of accounting, they claim that the common improvement regulation says, well, forget that. We're going to add a whole new category of cost. The much more sensible reading of the common improvement regulation is compatible with the view that they are category two cost. Yeah, but that's, that's the issue. Unless we agree with you that common improvements are category two cost, that's not going to help you. Well, as I said before, we think that the more natural reading of the common improvement regulation is an elaboration on what are category two cost. But if the court were to accept the government's position that they count, if at all, under category one, we would also prevail on that. They are category one cost. What the reg doesn't say, and the government would like it to say, is that in addition to incurring common improvement cost, you must also construct the cost of dwelling units. The statute doesn't say that. It provides category one or two. Either one of those is sufficient. And we believe that the regulation has to have a home in the statute. And it can be read under either A or B, category one or category two. We believe it's more comfortably under category two that common improvements as described in the regulation are category two, that they are improvements to real property directly related to dwelling units and located at the site of dwelling units. But the problem that you have is that you don't build, you don't have any, don't build any houses and you don't have a contract for the sale of a house that's matured and that would give you the right to do this. I mean, I think that your argument in your brief is really excellent. And I don't think the government, it is. It's a wonderful brief. And I don't think the government has an answer to it, excepting for the fact that you don't have any houses here. And narrow-minded people like we sometimes are would say, well, yeah, but. Your Honor, nothing in the statute requires us to construct homes. There's a statutory. That's what it all comes down to. And I would point out that in the archetypal case that Mr. Weiner suggests, where a home builder has built a home and only has common improvements, but for the common improvements, they wouldn't even have a long-term contract because they've already finished the home by the time the homeowner moves in. So the only thing that makes contracts of that type long-term contracts, let alone home construction contracts, is the fact that the builder is going to build additional common improvements. So it doesn't seem strange to me at all that our taxpayer is building the common improvements and continues to build them as builders are building homes in those homes. What we do is absolutely essential to the use and enjoyment of homes. And we think that is sufficient under the statute. One last point. The government seems to present the argument that site can only be read as the lot. We think that is not a natural reading of that term at all. And it's belied by other signals in the statute. As we say, the common improvement regulation should be construed as an elaboration, an interpretation of the site, to include the tract or tracts of land. Otherwise, the rule would be impossibly narrow. Thank you. Thank you.